UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKIE STORM,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>IDAHO DEPARTMENT OF CORRECTION; BRENT REINKE; CORRECTIONAL MEDICAL SERVICES; PHYSICIAN'S ASSISTANTS A-Z; DOCTORS A-Z; JEFF SHAHAN; IDAHO STATE CORRECTIONAL INSTITUTION; MEDICAL STAFF,<br><br>　　　　　Defendants. | Case No. 1:10-cv-00319-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a partial Motion to Dismiss (Dkt. 25) filed by

Defendant Correctional Medical Services.  Also pending are the following motions filed

by Plaintiff: (1) Motion for Production of Documents (Dkt. 16); (2) Motion for

Appointment of Counsel (Dkt. 18); (3) Motion for Formal Service (Dkt. 20); (4) Motion

to Compel (Dkt. 21); (5) Motion for Default Judgment (Dkt. 24); and (6) Motion for

Extension of Time to Respond. (Dkt. 30).

Having fully reviewed the record, the Court finds that the facts and legal

arguments are adequately presented in the briefs and record.  Accordingly, in the interest

of avoiding further delay, and because the Court finds the decisional process would not be

significantly aided by oral argument, this matter shall be decided on the record before this

Court.   *See* D. Idaho Local Rule 7.1(b).  The Court concludes that, except for his claims

relating to physical therapy, Plaintiff did not exhaust his administrative remedies and the

Court will dismiss those claims not relating to physical therapy.

## PROCEDURAL BACKGROUND

Plaintiff is a prisoner in the custody of the Idaho Department of Correction

(IDOC), currently incarcerated at Idaho State Correctional Institution (ISCI).  Plaintiff

suffers from arthritis in his lower back, bone spurs on the left side of his neck, and leg and

back pain from a pinched sciatic nerve.  *See Compl.*, Dkt. 3-1 at 3–5.  Plaintiff filed this

civil rights suit under 42 U.S.C. § 1983 against the CMS Defendants.  He alleged that he

received inadequate medical care in violation of the Eighth Amendment's prohibition

against cruel and unusual punishment and state law negligence.  *Initial Review Order* at

2-4, Dkt. 7.  In the Initial Review Order, Magistrate Judge Boyle allowed Plaintiff to

proceed with his Eighth Amendment claims against Defendants Correctional Medical

Services and Jeff Shahan, a Health Services Administrator.

On April 15, 2011, Defendants moved to dismiss all of Plaintiff's claims except for

those relating to physical therapy for his back – arguing that Plaintiff has failed to exhaust

his administrative remedies.  *See Motion to Dismiss*, Dkt. 25.  On May 10, 2011, Plaintiff

filed a Motion for Extension of Time to File Response (Dkt. 30), and on May 20, 2011,

filed his response.  *See Response*, Dkt. 31.  On June 3, 2011, Defendants filed their reply

MEMORANDUM DECISION AND ORDER -2-

in support of their Motion to Dismiss.  *See Reply*, Dkt. 34.  On August 2, 2011, Plaintiff

filed a Sur-Reply *(Supplemental Response*, Dkt. 35), to which Defendants objected (*Reply*

*to Supplemental Response*, Dkt. 36).  All motions are now ripe for adjudication.

**PLAINTIFF'S MOTION FOR EXTENSION OF TIME
AND SUR-REPLY**

Plaintiff's Motion for an Extension of Time (Dkt. 30) will be granted, and his

Supplemental Response (Dkt. 35) will be considered in deciding this motion.  Because

Plaintiff is proceeding pro se, the Court will not deny him the opportunity to fully present

his evidence and arguments, despite the fact that he has failed to comply with the Court's

procedural rules.  The Court will therefore consider all of Plaintiff's submissions in ruling

on the pending motions.

**MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate if a party shows "that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  The moving party may support its position by "citing to particular

parts of materials in the record, including depositions, documents, electronically stored

information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P.

56(c)(1)(A).

**1.      Exhaustion Requirements**

MEMORANDUM DECISION AND ORDER -3-

Pursuant to the Prison Litigation Reform Act of 1995 (PLRA),[1] a prisoner is required to exhaust all of his administrative remedies within the prison system before he can bring a civil rights lawsuit challenging the conditions of his confinement.  42 U.S.C. § 1997e(a).  "Proper" exhaustion of administrative remedies is required, meaning that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).  The *Jones* Court explained the important policy concern behind the exhaustion requirement: "allow[ing] prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court."  *Id*. at 204.

Idaho law also requires that a prisoner exhaust his administrative remedies before filing a civil lawsuit related to the conditions of his confinement.  Section 19-4206(1) of the Idaho Code provides that "[u]nless a petitioner who is a prisoner establishes to the satisfaction of the court that he is in imminent danger of serious physical injury, no . . . civil action shall be brought by [the prisoner] . . . with respect to conditions of confinement until all available administrative remedies have been exhausted."  This exhaustion requirement applies to claims regarding prison medical care.  *See Drennon v.*

---

[1]  110 Stat. 1321-71, *as amended*, 42 U.S.C. § 1997e, *et seq*.

*Idaho State Corr. Inst.*, 181 P.3d 524, 526, 530 (Idaho Ct. App. 2007) (affirming

dismissal for failure to exhaust claims regarding, among other things, the prisoner's

medical treatment).  Like the exhaustion requirement in the PLRA, section 19-4206

requires that the prisoner meet procedural deadlines to properly exhaust his administrative

remedies.  *Butters v. Valdez*, 241 P.3d 7, 12 (Idaho Ct. App. 2010) (relying on federal law

interpreting 42 U.S.C. § 1997e(a)).

      Failure to exhaust remedies is an affirmative defense that should be brought as an

unenumerated Rule 12(b) motion.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.

2002).  In deciding a motion to dismiss for failure to exhaust administrative remedies, a

court may look beyond the pleadings and decide disputed issues of fact.  *Id.* at 1119-20;

*see also Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369

(9th Cir. 1988) ("No presumptive truthfulness attaches to plaintiff's allegations, and the

existence of disputed material facts will not preclude the trial court from evaluating for

itself the merits of jurisdictional claims") (internal quotation marks and alteration

omitted)).  The defendant bears the burden of proving failure to exhaust.  *Brown v. Valoff*,

422 F.3d 926, 936 (9th Cir. 2005).

      If a plaintiff has failed to exhaust his administrative remedies, his claims are

subject to dismissal without prejudice.  *See Wyatt*, 315 F.3d at 1120.  An inmate must

exhaust his remedies prior to filing suit; exhaustion cannot be accomplished during a suit

or after a suit has been filed.  *See McKinney v. Carey,* 311 F.3d 1198, 1199 (9th Cir.

2002) (per curiam) (suit dismissed without prejudice where prisoner attempted to exhaust

MEMORANDUM DECISION AND ORDER -5-

administrative remedies during pendency of suit).

## 2.      Grievance Process of the IDOC

The IDOC's grievance process consists of three stages.  First, any inmate with a

concern is required to seek an informal resolution by filling out an Offender Concern

Form, addressed to the staff person "most directly involved" with the inmate's issue.

*Affidavit of Jill Whittington* ¶4–5, Dkt. 25-2.  If the issue cannot be resolved informally

through the use of a Concern Form, the inmate must then file a Grievance Form.  *Id.* ¶6.

The Grievance Form has to be submitted within 30 days of the incident giving rise to the

grievance.  *Id.*

When submitting a Grievance Form, the inmate must attach a copy of the Concern

Form, showing the inmate's attempt to settle the issue informally.  Only one issue may be

raised in each grievance.  *Id.* at ¶7.  Where, as here, the grievance involves a medical

issue, the Grievance Form is "routed through medical staff supervised by the Health

Services Administrator, who is employed by the Health Care Contractor."  *Id.* ¶8.  The

Health Services Administrator is charged with responding to the grievance.  *Id.*

If the decision on an inmate's grievance is not satisfactory to the inmate, he or she

may appeal that decision.  The grievance policy requires that the inmate file an appeal

within 5 days of receiving the response to the grievance.  *Id.* ¶9.  In cases of medical

grievances, the appellate authority is the Regional Manager or Vice President of the

medical contractor.  *Id.* ¶10.  Not until the completion of all three of these

steps—Concern Form, Grievance Form, and grievance appeal—is the grievance system

exhausted.  *Id.* ¶11.

Prior to November 2007, the IDOC did not keep records of grievances submitted

by inmates if those grievances were not processed for some reason.  Since November

2007, all grievances are logged and recorded, even those that are not processed.  *Id.* ¶13.

Grievances are logged into a computer database, which is searchable by an inmate's name

or IDOC number, by grievance number, or by year.  *Id.*

**3.     Findings Regarding Plaintiff's Use of the Grievance Process**

Jill Whittington is the current Grievance Coordination and custodian of grievances

and grievance logs at ISCI.  *Whittington Aff.* ¶ 12.  In this role, she searched the grievance

database for any grievances filed by Plaintiff and located seven grievances filed by

Plaintiff during the time in question.  *Id.* ¶14.  According to the exhibits attached to the

Whittington Affidavit, on April 24, 2009, Plaintiff attempted to file a grievance regarding

the treatment of his back in relation to his cyatic nerve.  Ex. D to *Whittington Aff.*, Dkt.

25-2 at 49.  This grievance was returned to Plaintiff "without action being taken" because

Plaintiff did not submit copies of any concern forms showing his attempts to resolve the

issue informally.  *Id.*  The same result came of another grievance filed on June 24, 2010,

also for Plaintiff's failure to include concern forms.  *Id.*  Plaintiff also had improperly

filed grievances returned to him without action on July 23, 2009, and January 12, 2010.

*Id.*  Neither of these grievances are considered fully grieved or properly exhausted.  On

January 22, 2010, one of Plaintiff's grievances was granted at the reviewing authority

level.  *Id.*  Plaintiff failed to timely appeal this granting of the grievance, making it not

MEMORANDUM DECISION AND ORDER -7-

fully grieved or exhausted. *Id.* However, on June 11 and 12 of 2009, Plaintiff filed two

medical grievances that were eventually fully and properly exhausted. *Id*. at 49.

The grievances were logged as Grievance Numbers II 090000837, and II

090000841. *Id.* at 49. Regarding the former, the Director of Nursing told Plaintiff on

June 25, 2009, that his care was appropriate because he had "x rays done as ordered ...

and then [was] seen by Dr. Adrian on 6/19/09 and NP Foss on 6/24." *Id.* The Health

Services Administrator concurred with the Director's response and denied Plaintiff's

grievance on July 6, 2009, noting that Plaintiff will be scheduled for physical therapy. *Id.*

at 52. Plaintiff appealed on July 10, 2009, arguing that he still had not been seen by a

physical therapist. *Id*. at 53. The appeal was denied on August 11, 2009. *Id*. The final

denial of Plaintiff's grievance failed to address his request for physical therapy, noting

only that they "reviewed your grievance and concur with [the Health Services

Administrator]." *Id*.

The later grievance, II 090000841, concerned issues relating to Plaintiff's access to

pain medication for treatment of "arthritis in back and pinched [sciatic] nerve."

Whittington Plaintiff's back. *Id*. at 55. Here, the Director of Nursing told Plaintiff on

June 22, 2009, that his care was appropriate because he had "been seen and provided

several different medications for pain," but that narcotics "are only for short term use as

they are so addictive." *Id*. On July 6, 2009, the Health Services Administrator concurred

generally with the Director's response, noting specifically, that "[y]ou are also being

referred to Physical therapy to assist you with your pain management program." *Id*. at 56.

MEMORANDUM DECISION AND ORDER -8-

Plaintiff appealed this determination stating that he agrees with the medication

recommendations, but that he is "[n]ot being seen by a physical therapist." *Id*. Plaintiff

states in his grievance appeal that "I don't want to just be medicated, I want to be fixed

[even if it requires surgery]." *Id*. On September 14, 2009, his level 3 appeal was denied

because "[Plaintiff has] been seen by P.T." *Id*.

In his Response, Plaintiff submitted copies of thirteen Concern Forms regarding

his medical treatment. However, the forms do not show any exhausted medical

grievances with respect to any of those Concern Forms, other than the two already

acknowledged by Defendants. *See* Exs. A-O to *Affidavit of Rickie Storm*, Dkt. 31-1 at 30-

46.

### B.      Analysis

Defendants argue that, with the exception of Plaintiff's claims relating to physical

therapy, Plaintiff has failed to properly exhaust his administrative remedies regarding the

medical treatment he received. *Defs.' Mem. in Support of Mot. to Dismiss*, Dkt. 25-1 at 9-

18. Specifically, Defendants argue that all claims concerning Defendant's foot and any

claims concerning his back, except for those concerning physical therapy, should be

dismissed for failure to exhaust. *Id*.

The Court agrees that Plaintiff did not timely appeal the denial of any of his

grievance, except as noted above. Because Plaintiff did not meet the IDOC's deadline

with respect to the grievance appeal, he did not properly exhaust his administrative

remedies.

Plaintiff counters that he completed the grievance process "to the best of his abilities." *Id*. at 11.  However, he fails to offer an explanation of why he did not file timely appeals of the un-exhausted grievances, other than a bald assertion that he "fully exhausted his administrative remedies during the whole process." *Id*. at 2.  Generally, however, Plaintiff's response repeats the claims he made in his Complaint.

Because Plaintiff did not properly complete the grievance process with respect to most of his medical treatment, his § 1983 claims against the CMS Defendants, except as to those relating to requests for physical therapy, must be dismissed.  42 U.S.C. § 1997e(a).  Because Plaintiff does not allege that he is currently in imminent danger of serious injury, his medical claims under state law must also be dismissed.  I.C. § 19-4206(1).

**4.       Defendant Shahan**

Even though Defendant Shahan has not been served and therefore has not joined the CMS Defendants' Motion to Dismiss, the exhaustion requirements of 42 U.S.C. § 1997e(a) and Idaho Code section 19-4206(1) apply equally to Plaintiff's claims against Shahan.  Thus, the Court will dismiss those claims against Shahan not relating to physical therapy as well.

**PLAINTIFF'S REMAINING MOTIONS**

**1.       Motion for Production of Documents (Dkt. 16) & Motion to Compel (Dkt. 21)**

Plaintiff requests a full copy of his medical history from CMS.  Defendants do not oppose this request.

MEMORANDUM DECISION AND ORDER -10-

It is beyond dispute that a patient is entitled to copies of his own medical records from his medical providers.[2]  The entity from which Plaintiff seeks medical records is a party to this suit, and has access to, probably reviewed, and likely used Plaintiff's medical records in its defense.   Formal discovery in such an instance would be wasteful, as Plaintiff is proceeding in forma pauperis.  Accordingly, the Court will grant Plaintiff's request for production of his medical records and will require Defendants to produce a copy of the pertinent medical records to Plaintiff within fourteen (14) days after entry of this Order.

2.      **Motion for Appointment of Counsel**

As he did in his Complaint, Plaintiff once again asks for appointment of counsel. Plaintiff cites his status as an inmate and lack of legal resources and training as grounds for granting the motion.  On December 30, 2010, Judge Boyle denied this request by Initial Review Order.  Dkt. 11.

In civil cases, counsel should be appointed only in "extraordinary cases."  *Wilborn v. Escalderon*, 789 F.2d 1328, 1330 (9th Cir. 1986).  To determine whether extraordinary circumstances exist, the court should evaluate two factors: (1) the likelihood of success on the merits of the case, and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of legal issues involved.  *Terrell v. Brewer*, 935 F.2d 1015, 1017

---

[2] *See, e.g.*, I.C. § 39-1392(d), which provides that, "nothing in this act shall be construed as restricting or altering the rights of inspection and copying by patients and their duly authorized representatives with respect to the official chart maintained in connection with the course of care provided such patients, which right of copying and inspection and to use such charts and their contents in appropriate judicial proceedings is unaltered by this enactment."

(9th Cir. 1990).  Neither factor is dispositive, and both must be evaluated together.  *Id*.

Having reviewed the record in this case, the Court concludes that extraordinary

circumstances are not present.  Plaintiff has some chance of success on the merits of some

of his claims, and Plaintiff has effectively argued his position and been able to gather and

submit appropriate evidence while incarcerated.  Accordingly, Plaintiff's Motion for

Appointment of Counsel (Dkt. 18) will be denied.

**3.      Motion for Formal Service and Motion for Default Judgment**

Plaintiff requests that the Court order the United States Marshall to effect formal

service to those parties who have yet to make an appearance.  Plaintiff later moved for

default judgment for failure to comply with the Court's order to submit a waiver of

service.  However, all but one of the parties, Defendant Shahan, were dismissed in the

Initial Review Order.

**A.      Doctors A-Z, ISCI Medical Staff, and Physicians Assistants A-Z, Idaho
Department of Corrections, and Brent Reinke**

On December 30, 2010, these Defendants were dismissed in the Initial Review

Order.  Dkt. 11.  In the order, the unnamed defendants were dismissed because the Clerk

of Court cannot effect service on unknown defendants.  Reinke was dismissed because he

had no apparent relation to Plaintiffs claims.  IDOC was dismissed on Eleventh

Amendment Grounds.  Judge Boyle allowed Plaintiff time to amend his complaint to cure

any deficiencies regarding these putative defendants, but he elected not to amend, and the

time to do so has passed.  Thus, these defendants are dismissed and Plaintiff's Motion for

Formal Service is denied with regard to these parties.

### D.      Defendant Shahan

Shahan was not dismissed in Judge Boyle's Initial Review Order.  Instead, Judge

Boyle allowed Plaintiff to proceed with his Eighth Amendment claims against Shahan.

On February 2, 2011, John J. Burke of Hall, Farly, Oberrect & Blanton, P.A., was served

a copy of the Complaint, a copy of the Initial Review Order, and a Waiver of Service of

Summons to be executed on Shahan's behalf.  Dkt. 17.  While it is clear that Shahan is a

CMS Defendant, Burke has not yet made an appearance on his behalf.

The Clerk of Court shall send another waiver of service of summons form, a copy

of the Complaint, and a copy of this Order, in compliance with Federal Rule of Civil

Procedure 4(d),[3]  to Defendant Shahan, in care of John J. Burke of Hall, Farly, Oberrect &

Blanton, P.A., PO Box 1271, Boise, ID, 83701.  If Shahan, or his attorney, do not return

the waiver within 30 days, the Clerk of Court is instructed to provide a Summons and the

Complaint to the U.S. Marshal Service for personal service on him.

Mr. Shahan is advised that if Plaintiff is required to utilize the U.S. Marshal or a

private process server to obtain personal service because he refuses to use the waiver

procedure, then Plaintiff can request that each Defendant be charged personally for the

costs of service, including any attorney's fees necessary to collect the service costs  *See*

Fed. R. Civ. P. 4(d)(1) & (2); *see Estate of Darulis v. Garate*, 401 F.3d 1060 (9th Cir.

---

[3]  Under the Waiver procedure, a defendant has thirty (30) days to sign and return the Waiver.  If the defendant actually signs and returns the Waiver, then he or she has an additional sixty (60) days to file an answer.

2005).

## ORDER

**IT IS ORDERED THAT**:

1.      Motion for Production of Documents (Dkt. 16) is GRANTED;

      A.      Defendants shall produce a copy of Plaintiff's medical records to

          him within fourteen (14) days after entry of this Order.

2.      Motion for Appointment of Counsel (Dkt. 18) is DENIED;

3.      Motion for Formal Service (Dkt. 20) is GRANTED IN PART AND

      DENIED IN PART;

      A.      The Clerk of Court shall send another waiver of service of summons

          form, a copy of the Complaint, and a copy of this Order, in

          compliance with Federal Rule of Civil Procedure 4(d), to Defendant

          Shahan, in care of John J. Burke of Hall, Farly, Oberrect & Blanton,

          P.A., PO Box 1271, Boise, ID, 83701.  If Shahan, or his attorney, do

          not return the waiver within 30 days, the Clerk of Court is instructed

          to provide a Summons and the Complaint to the U.S. Marshal

          Service for personal service on him.

4.      Motion to Compel (Dkt. 21) is MOOT;

5.      Motion for Default Judgment (Dkt. 24) is DENIED;

6.      Defendants' Partial Motion to Dismiss (Dkt. 25) is GRANTED;

      A.      Plaintiff may proceed with his Eighth Amendment claims and his

medical malpractice claims against CMS and Shahan as they relate

to physical therapy.  All other claims and all other Defendants are

DISMISSED.

7.      Plaintiff's Motion for Extension of Time (Dkt. 30) is GRANTED.



DATED:  **September 22, 2011**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER -15-**