## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RICKIE STORM,<br><br>               Plaintiff,<br><br>     v.<br><br>CORRECTIONAL MEDICAL SERVICES, n/k/a CORIZON, INC.; MICHAEL TAKAGI, P.A.; CATHY FITZGERALD, P.A.; DR. LOIS ADRIAN; DR. PATMAS; SETH YOURKETTER, P.A.; CARTNEY RICH; CONNIE SMOCK; ANITA TRAVIS; LARRY L. HYNES; JAN EPP; DIANA OBENAUER; AND JEFF SHAHAN,<br><br>               Defendants. | Case No. 1:10-cv-00319-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Motion for Summary Judgment filed by the remaining Defendants: Correctional Medical Services (now known as Corizon, Inc.)[1]; Jeff Shahan; Michael Takagi; and Connie Smock. (Dkt. 78) Also pending is Plaintiff's Motion to Compel. (Dkt. 88.)

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, this matter shall be decided on the record before this Court without oral argument. D. Idaho Loc.

---

[1] For ease of reference, the Court will refer to this Defendant as "Corizon."

**MEMORANDUM DECISION AND ORDER - 1**

Civ. R. 7.1. For the reasons that follow, the Court concludes that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law.

## PLAINTIFF'S MOTION TO COMPEL

Plaintiff has filed a Motion to Compel, arguing that Defendants have failed to produce certain documents requested by Plaintiff in discovery. (Dkt. 88.) Discovery closed on May 15, 2013. (*See* Dkt. 80 at 4.) However, Plaintiff filed his Motion to Compel on June 27, 2013, after the close of discovery and after Defendants filed their Motion for Summary Judgment. Further, Defendants provided Plaintiff with their response to his requests for the production of documents on June 20, 2012, over a year before Plaintiff filed his Motion to Compel. (*See* Exhibit to Motion to Compel, Dkt. 88-2 at 10.) Plaintiff has not provided any explanation for his delay in filing the Motion, and the Motion will therefore be denied.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### 1.    Introduction

Plaintiff, a prisoner in the custody of the Idaho Department of Correction ("IDOC"), filed his initial Complaint in this matter on June 24, 2010. (Dkt. 3.) In the Complaint, Plaintiff brought Eighth Amendment claims and medical malpractice claims against the following Defendants: the IDOC; Brent Reinke, Director of the IDOC; Corizon, the corporation that provides prison medical care; Jeff Shahan, Health Services Administrator for Corizon; the Idaho State Correctional Institution ("ISCI"), and various unidentified medical providers. (*See* Dkt. 3, 7.) In its Initial Review Order, the Court

**MEMORANDUM DECISION AND ORDER - 2**

allowed Plaintiff to proceed (1) on his section 1983 claim against Defendant Corizon, and (2) on his state law negligence claims against Defendant Corizon and Shahan. (Dkt. 11.)

Over a year later, Plaintiff filed an Amended & Supplemental Complaint (Dkt. 48), which the Court construed as a motion to amend the complaint. (Dkt. 65.) The Amended & Supplemental Complaint added several Defendants who had previously been unidentified, but it did not contain any specific allegations against Defendants Corizon or Shahan. Plaintiff has since informed the Court that he believed he was not required to include all of his allegations in the Amended & Supplemental Complaint, but only those against the new Defendants. (Resp. to Mot. for Summ. Judg. ("Response"), Dkt. 84, at 2.)

The Court granted the motion to amend and allowed Plaintiff to proceed against additional Defendants Michael Takagi, Cathy Fitzgerald, Dr. Lois Adrian, Dr. Patmas, Seth Youstetter, Cartney Rich, Connie Smock, Jan Epp, and Diana Obenauer. (*See* Dkt. 65 at 1-3.) However, claims against Fitzgerald, Adrian, Patmas, Youstetter, Rich, Epp, and Obenauer were later dismissed without prejudice because Plaintiff had failed to provide the Court with service addresses for those Defendants. (Dkt. 86.) Therefore, only Defendants Corizon, Shahan, Takagi, and Smock remain in this case.

## 2.    Material Facts

This section includes facts that are undisputed and material to the resolution of the issues in this case. Where material facts are in dispute, the Court has included Plaintiff's version of facts, insofar as that version is not contradicted by clear documentary evidence in the record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell

**MEMORANDUM DECISION AND ORDER - 3**

two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.")

Plaintiff alleges generally that Corizon and its medical staff make medical decisions based on how much a given medical treatment will cost. He also includes more specific allegations regarding his particular ailments.

The events at issue in this case occurred while Plaintiff was incarcerated at ISCI and involve Plaintiff's ongoing and severe back, leg, and foot pain. Plaintiff was transferred to ISCI from the Canyon County Detention Center ("CCDC") and arrived at the Reception and Diagnostic Unit ("RDU") of ISCI on March 18, 2009. (Am. & Suppl. Compl., Dkt. 48, at 3; Affidavit of Michael Takagi ("Takagi Aff."), Dkt. 78-3 at ¶ 8.) Defendant Michael Takagi, a physician's assistant, has described the medical process involved when a new inmate arrives at the RDU:

> Generally, when an inmate arrives at the RDU, the inmate undergoes a medical history and screening, which includes completion of an inmate questionnaire, taking of vital signs, current medical conditions, medical history, and [tuberculosis] history, current medications, allergies, and evaluation of need for referrals. . . . Laboratory tests for [complete blood count], [comprehensive metabolic panel], HIV, and [rapid plasma reagin] would also be reviewed.

(Takagi Aff. ¶ 8.)

On Plaintiff's initial screening form, it was noted that Plaintiff had already had x-rays for his neck and back, and that he suffered from numbness in his legs and arthritis in

**MEMORANDUM DECISION AND ORDER - 4**

his lower back.[2] (*Id.* & Ex. A at SICI 411.) When he arrived at ISCI Plaintiff was taking magnesium oxide and Flexeril, a muscle relaxant. (*Id.*) Defendant Takagi gave a verbal order for Plaintiff to continue to receive those medications for seven days. (*Id.* at SICI 112.) Plaintiff states that he had two medical memos from CCDC with him in the RDU, one allowing him to wear his personal shoes and another prescribing him a bottom bunk. (Am. & Suppl. Compl., Dkt. 48, at 12; Response, Att. B.) Although Defendants dispute this allegation, the Court accepts it for purposes of this decision.

## A.    *Back and Leg Pain*

P.A. Takagi performed the initial physical evaluation of Plaintiff two days later on March 20, 2009. (Takagi Aff. ¶ 10.) Plaintiff claims that Takagi "stopped all memos and medications from Canyon County Jail." (Am. & Suppl. Compl. at 3.) According to Takagi's testimony and notes, the Plaintiff's upper and lower neurological reflexes were absent," he was experiencing back pain, and he "had decreased reflexes globally due to Magnesium oxide." (Takagi Aff. ¶ 10 & Ex. A at SICI 125.) Therefore, Takagi discontinued the magnesium oxide and prescribed ibuprofen. (*Id.* ¶ 10 & Ex. A at SICI 112.)

Takagi noted "that the patient had a history of Hepatitis B exposure, but that he had a negative antigen, which means that he had been exposed in the past and had been

---

[2] The results of the x-ray, taken while Plaintiff was in the CCDC, showed that Plaintiff had "minimal anterior hypertrophy at the lower lumbar levels from L1 through L5 with some interspace narrowing at the L5-S1 level. The other levels [were] preserved and there [was] no compression." (Response, Att. B at SICI 158.)

**MEMORANDUM DECISION AND ORDER - 5**

treated and immunized for it." (*Id*. ¶ 10.) Plaintiff had a positive tuberculosis skin test, or PPD test, but Takagi states that Plaintiff had already been treated and that more treatment was unnecessary. (*Id*.) Plaintiff did not exhibit any signs of radiculopathy or sciatic impingement. (*Id*.) Takagi also requested Plaintiff's medical records from the CCDC and enrolled Plaintiff in the chronic care clinic for a follow-up appointment in three months due to Plaintiff's pain. (*Id*. & Ex. A at SICI 112.)

In addition to alleging that this initial evaluation constituted deliberate indifference, Plaintiff claims that his medical treatment for his back pain thereafter was substandard as well. (Compl., Dkt. 3, at 4-10.) On April 24, 2009, Dr. Lois Adrian examined Plaintiff and re-ordered Plaintiff's medical records from CCDC. (Takagi Aff., Ex. A at SICI 112.) At this appointment, Plaintiff stated that he did not want to take ibuprofen for pain because it would destroy his liver and that he wanted "pain pills and muscle relaxers." (*Id*. at SICI 125.) Dr. Adrian prescribed naproxen for pain, specifically noting that Plaintiff should not receive anything stronger. (*Id*.) Plaintiff was referred for another follow-up appointment in the chronic care clinic. (*Id*.)

On May 19, 2009, Defendant Takagi again evaluated Plaintiff, who complained of continuing leg and back pain. (*Id*. at ¶ 11 & Ex. A at SICI 124.) Plaintiff's medical records had still not arrived from CCDC. Takagi noted that Plaintiff was not in any acute distress and reported no pain "on or off the examination table" or "when lying down or sitting up." (*Id*.) Plaintiff did report pain in his paraspinous muscles and "some pain radiating down the left leg from the mid buttocks." (*Id*.) Plaintiff told Takagi, "I want

**MEMORANDUM DECISION AND ORDER - 6**

pain meds. My doctor in Canyon County said I should be on pain meds even though I am

an addict." (*Id*.) Takagi assessed Plaintiff with "low back pain and questions of sciatica,"

and ordered naproxen and Tylenol. (*Id*.) Finally, Takagi ordered an x-ray and a follow up-

appointment "on an as-needed basis or if the x-ray were abnormal." (*Id*.) An x-ray of

Plaintiff's spine was conducted on May 22, 2009. (*Id*., Ex. A at SICI 124.) There is

nothing in the medical records submitted by the parties that indicate an abnormality.

Plaintiff had another appointment with Dr. Adrian on June 18, 2009. (*Id*. at SICI

111.) Dr. Adrian prescribed Indocin (a pain medication used to treat osteoarthritis and

rheumatoid arthritis) and physical therapy. Plaintiff was seen again less than a week later,

when an unidentified medical staff member prescribed Robaxin (a muscle relaxant),

Vicodin, and the corticosteroid prednisone. (*Id*.) It is unclear how long Plaintiff took the

Vicodin and Robaxin, but the medical records indicate that it was only for a limited time.

(Response, Att. B at SICI 117; 119.)

Plaintiff was treated with physical therapy in several sessions until the therapist

stated on September 1, 2009, that further treatment should wait until Plaintiff was given

an MRI. (Compl. at 4-5; Response, Att. B at SICI 120, 121.) Plaintiff claims that various

medical staff delayed the MRI until March 2010. (Am. & Suppl. Compl. at 18.)

On September 23, 2009, Plaintiff was seen by P.A. Catherine Fitzgerald. She noted

that Plaintiff was doing the stretches he learned in physical therapy but that his back and

leg were still sore. (Response, Att. B at SICI 120.) P.A. Fitzgerald evaluated Plaintiff

again on October 16, 2009. At this appointment, Plaintiff complained that his current pain

**MEMORANDUM DECISION AND ORDER - 7**

medication was not working, but that he "felt great" when he had been on Vicodin and that he "did well" on prednisone. (*Id.*) P.A. Fitzgerald noted that Plaintiff had right sacroiliac joint pain with radiopathy. (*Id.*)

On October 19, 2009, Dr. Michael Patmas suggested a sacroiliac joint block to ease Plaintiff's pain. (*Id.* at SICI 147.) On October 21, P.A. Fitzgerald requested a consultation with an outside medical provider, Dr. Heckard, regarding Dr. Patmas's suggestion of injecting ATP (adenosine triphosphate), which is used to treat nerve pain, into Plaintiff's sacroiliac joint. (*Id.* at SICI 108-09.) Fitzgerald also scheduled the injection for a future date. (*Id.*)

On October 28, 2009, Dr. Heckard responded to P.A. Fitzgerald's consultation request, stating that "proper SI joint injection is done under fluoroscopic guidance or CT to ensure proper needle placement, a procedure not done [at Dr. Heckard's office]. Also it is better to do SI joints [with] ambulatory sedation [and] ECG monitoring." (*Id.* at SICI 147.) It appears that P.A. Fitzgerald then cancelled the scheduled procedure, but, for some reason, another consultation request was sent the next day. (*Id.* at SICI 108, 144.) The responding individual[3] stated that "[t]he standard of car [sic] for *proper* injection of SI joint is image guided." (*Id.* at SICI 144.)

P.A. Takagi evaluated Plaintiff on November 10, 2009. Takagi "noted that [Plaintiff] was complaining of right rear thigh pain that was not continuous, numb or

---

[3] The signature of this individual is illegible, though it could have been Dr. Heckard.

**MEMORANDUM DECISION AND ORDER - 8**

tingling." (Takagi Aff. ¶ 12.) The pain "shot to the back of the right thigh one to four times a day when [Plaintiff] moved quickly." (*Id.*) Plaintiff admitted to Takagi that he played racquetball and stated, "You guys have turned me into a cocktail here. I don't think anything has worked except the Vicodin." (Id. & Ex. A at SICI 117.) Plaintiff "moved around the room and on and off the table easily." (*Id.* ¶ 12.) Plaintiff's back had a full range of motion "with no spasm or tenderness except for the sacroiliac joints bilaterally." (*Id.*) His "[d]eep tendon reflexes were normal bilaterally and he showed good strength and sensation." (*Id.*) Takagi's "assessment was lower back pain with likely sacroiliac joint arthritis and occasional sciatica," but he noted that Plaintiff "was significantly improved from his initial exams." (*Id.*) Plaintiff "agreed to try Robaxin on an as-needed basis" and said that "he would continue stretching and strength exercises as those helped." (*Id.*) Finally, Takagi decided to check whether Dr. Patmas "would inject the sacroiliac joint on-site or offsite with Kenalog (a steroid) to address the patient's arthritis." (*Id.*) Plaintiff's medical records indicate that P.A. Takagi spoke with Dr. Patmas on November 17, 2009, and that Dr. Patmas himself would administer the injection. (*Id.*, Ex. A at SICI 117.)

December 9, 2012, was the date that Plaintiff was scheduled for the joint injection. (*Id.*, Ex. A at SICI 4.) Plaintiff states that the injection was performed "at ISCI outpatient clinic by Patmas," that it "was not image guided," and that it was done "basically with no sedation." (Response at 5.)

Plaintiff had an MRI on March 4, 2010, which apparently revealed a herniated

**MEMORANDUM DECISION AND ORDER - 9**

disc. (Am. & Suppl. Compl. at 18, 21.) Plaintiff underwent a laminectomy—a spinal decompression surgery—on August 17, 2010. (*Id*. at 10, 21.) Plaintiff states that medical staff at ISCI did not appropriately check and dress his surgical wound, that he developed an infection as a result, and that he had to have a second surgery to fix the infection. (*Id*. at 10, 22.)

### B.    *Foot Pain*

Plaintiff also suffered from pain in his foot. When medical staff x-rayed Plaintiff's foot, they determined that although Plaintiff had some ligament damage, nothing was broken. (Compl. at 7.) After two months without improvement, a foot and ankle specialist took more x-rays and determined that Plaintiff's foot was broken in three places. (*Id*. at 7-9.) Plaintiff underwent surgery to repair his foot, during which two of his toes were fused. (*Id*.)

### C.    *Grievances*

Plaintiff filed several administrative grievances to which Defendant Smock, Corizon's Regional Director of Nursing, responded as the appellate authority. The first grievance, dated January 27, 2011, alleged that Plaintiff had overheard medical staff discussing another inmate's medical history and opining that Corizon was understaffed "and not able to meet medical needs of the inmates at ISCI." (Affidavit of Connie Smock ("Smock Aff."), Ex. A, Dkt. 78-7 at 2.) Anita Travis issued the first level response, thanking Plaintiff for alerting her that confidential medical information was being discussed within earshot of other inmates and stating that the incident had been discussed

**MEMORANDUM DECISION AND ORDER - 10**

at a staff meeting. (*Id.*) With respect to the statements by medical personnel that Corizon was understaffed, Travis stated, that "[i]t is very easy for individuals not involved to 'arm chair quarterback' any situation and discuss what they would do, or how they think any particular situation should be handled. But in the end they are just their opinions. We regret any implications that you took from this discussion of personal opinions." (*Id.*) Travis's response to the grievance was upheld at the second level of grievance review, where Larry Hynes stated that "the staffing at all facilities is closely monitored by our company . . . and the IDOC to insure adequate staffing is maintained." (*Id.* at 3.) Plaintiff appealed, and Defendant Smock agreed with the first and second level responses. (*Id.*) The Court notes that this grievance does not specifically relate to Plaintiff's medical treatment.

Plaintiff filed his second grievance on March 14, 2011. In this grievance, Plaintiff complained that Travis improperly gave "a medical diagnoise's [sic] to correctional staff" that resulted in Plaintiff being denied shoes that fit properly. (*Id.*, Ex. B, Dkt. 78-8 at 2.) Travis explained in her first level response that she "was asked to evaluate whether there was a change in [Plaintiff's] gait" when he put on a new pair of shoes. (*Id.*) Travis stated, "After you had the shoes put on your feet, you were asked to walk and I did not observe any difference in your gait between the old and new shoes. I made no diagnosis and performed no treatment." (*Id.*) Travis's response was upheld at the second level of authority because Travis "was asked to observe [Plaintiff] walking in the shoes and she did just that." (*Id.* at 4.) Defendant Smock denied Plaintiff's appeal, finding that "Travis's

**MEMORANDUM DECISION AND ORDER - 11**

assessment of [Plaintiff's] gait while wearing shoes was appropriate." (*Id*.)

In his third grievance, Plaintiff asked to talk to somebody about his medical options because he was unsure if he wanted surgery on his foot. (*Id*., Ex. C, Dkt. 78-9 at 2.) Rich Cartney responded that if Plaintiff submitted a health services request, medical staff could discuss his options with him. (*Id*.) Plaintiff appealed, and Defendant Smock informed Plaintiff that he had to "use the health service request form instead of the concern form for [a] request to be seen by medical." (*Id*. at 3.)

Plaintiff filed a fourth grievance asking to see a dental hygienist to have his teeth cleaned. (*Id*., Ex. D, Dkt. 78-10 at 2.) Rich Cartney responded to the grievance by pointing out that Plaintiff had been seen by Dr. Chandler on August 11 and August 18, 2011. Plaintiff appealed, and Defendant Smock stated, "Please submit a dental health service request if you need to be seen by the hygienist." (*Id*. at 3.)

## 3.    Summary Judgment Standard

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment rule "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is not "a disfavored procedural shortcut," but is instead the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327.

**MEMORANDUM DECISION AND ORDER - 12**

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Rather, there must be no *genuine* dispute as to any *material* fact in order for a case to survive summary judgment. Material facts are those "that might affect the outcome of the suit." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party is entitled to summary judgment if that party shows that each material fact cannot be disputed. To show that the material facts are not in dispute, a party may cite to particular parts of materials in the record, or show that the adverse party is unable to produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(A) & (B). The Court must consider "the cited materials," but it may also consider "other materials in the record." Fed. R. Civ. P. 56(c)(3).

If the moving party meets its initial responsibility, then the burden shifts to the opposing party to establish that a genuine dispute as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The existence of a scintilla of evidence in support of the non-moving party's position is insufficient. Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.

Material used to support or dispute a fact must be "presented in a form that would

**MEMORANDUM DECISION AND ORDER - 13**

be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Affidavits or declarations submitted in support of or in opposition to a motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). If a party "fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the Court may consider that fact to be undisputed. Fed. R. Civ. P. 56(e)(2). The Court may grant summary judgment for the moving party "if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

The Court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. Although all reasonable inferences that can be drawn from the evidence must be drawn in a light most favorable to the non-moving party, *T.W. Elec. Serv., Inc.*, 809 F.2d at 630-31, the Court is not required to adopt unreasonable inferences from circumstantial evidence, *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

Statements in a brief, unsupported by the record, cannot be used to create an issue of material fact. *Barnes v. Indep. Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). The Ninth Circuit "ha[s] repeatedly held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." *Beyene v. Coleman Sec. Services, Inc.,* 854 F.2d 1179, 1182 (9th Cir. 1988) (citation and internal quotation marks omitted). Authentication, required by Federal Rule of Evidence 901(a), is not satisfied simply by attaching a document to an affidavit. *Id.* The affidavit

**MEMORANDUM DECISION AND ORDER - 14**

must contain "testimony of a witness with personal knowledge of the facts who attests to the identity and due execution of the document." *Id.*

### 4.    Plaintiff's Claims Against Corizon and Shahan Remain At Issue

Defendants Corizon and Shahan argue that because Plaintiff did not include any allegations against them in his Amended Complaint, all claims against them have been waived and must be dismissed. (Memo. in Supp., Dkt. 78-1, at 11-12.) The general rule in the Ninth Circuit is that an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474 (9th Cir. 1997), *overruled in part on other grounds by Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012) (en banc). Therefore, "a plaintiff waives all claims alleged in [an original] complaint which are not realleged in an amended complaint." *Id.*

In *Lacey*, the Ninth Circuit limited application of this general rule, holding that it does not apply to claims in an original complaint that were "dismissed with prejudice and without leave to amend." 693 F.3d at 928. The court left undisturbed, however, the application of the rule to claims against parties who are omitted from an amended complaint. *Id.*; *see also Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1990) (holding that the district court erred by entering judgment against a party named in the initial complaint, but not in the amended complaint). This rule would appear to preclude Plaintiff from asserting the claims in his initial Complaint against Corizon and Shahan.

However, the Ninth Circuit has recognized that the amendment-waiver rule can be

**MEMORANDUM DECISION AND ORDER - 15**

overly harsh. *Lacey*, 693 F.3d at 925-26. Moreover, the Court in its Initial Review Order stated that it could not effect service on the unidentified Defendants and that "Plaintiff may amend his complaint to state the real names of these individuals and request service once he determines this information." (Dkt. 11 at 7.) By this language, the Court did not intend to suggest that Plaintiff could disregard Local Rule 15.1, which states that "[a]ny amendment to a pleading, whether filed as a matter of course or upon a motion to amend, must reproduce the entire pleading as amended." It is understandable, however, that a pro se prisoner plaintiff, generally unfamiliar with the Federal Rules of Civil Procedure and the Local Rules, assumed that he needed only to add the allegations against the newly identified Defendants.

Therefore, the Court will consider Plaintiff's second pleading as a supplement to the Complaint and will consider the Complaint, and the Amended & Supplemental Complaint, together as the operative complaint in this case. The Court recognizes that a supplement to a complaint is technically limited to claims that arose after the filing of the lawsuit. *See* Fed. R. Civ. P 15(d) ("On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."). However, in this case equity suggests that the claims in the initial Complaint against Corizon and Shahan must be considered on the merits.[4]

---

[4] Defendants Corizon and Shahan did not move for summary judgment on the merits of the claims against them. (*See* Dkt. 78-1 at 12.) Ordinarily, a court considering granting summary

**MEMORANDUM DECISION AND ORDER - 16**

5.      **Section 1983 Claims**

Plaintiff brings claims under 42 U.S.C. § 1983, the civil rights statute, against Defendants Corizon, Takagi, and Smock.[5] To state a valid claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by the conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Prison officials are generally not liable for damages in their individual capacities under § 1983 unless they personally participated in the alleged constitutional violations. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *see also Iqbal*, 556 U.S. at 677 ("[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'" *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)). This causal connection "can be

---

judgment on a ground not raised by the moving party gives the non-moving party an opportunity to respond. *See* Fed. R. Civ. P. 56(f). However, Plaintiff responded not only to the Defendants' waiver argument, but he also responded on the merits, arguing that "all named Defendants" were deliberately indifferent to his serious medical needs. (Response at 2.) Plaintiff has also introduced evidence in an attempt to support his claims against Corizon and Shahan. (*See id.*, Att. B.) Therefore, the Court concludes that Plaintiff would not have responded any differently to Defendants' Motion for Summary Judgment even had Corizon and Shahan explicitly argued the merits, and the Court will consider those claims at this time.

[5] Plaintiff initially asserted § 1983 claims against Defendant Shahan, but he was not allowed to proceed on those claims. (*See* Dkt. 11 at 6-7.)

**MEMORANDUM DECISION AND ORDER - 17**

established by setting in motion a series of acts by others, or by knowingly refusing to

terminate a series of acts by others, which the supervisor knew or reasonably should have

known would cause others to inflict a constitutional injury." *Id.* at 1207-08 (internal

quotation marks, citation, and alterations omitted).

To succeed on his claims against Corizon as an entity, Plaintiff must meet the test

articulated in *Monell v. Department of Social Services*, 436 U.S. 658, 690-94 (1978). *See*

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1139 (9th Cir. 2012) (applying *Monell* to

private entities). Under *Monell*, the requisite elements of a § 1983 claim against a

municipality or private entity performing a state function are the following: (1) the

plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy

or custom; (3) the policy or custom amounted to deliberate indifference to the plaintiff's

constitutional right; and (4) the policy or custom was the moving force behind the

constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir.

2001).

An unwritten policy or custom must be so "persistent and widespread" that it

constitutes a "permanent and well settled" practice. *Monell*, 436 U.S. at 691 (quoting

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-168 (1970)). "Liability for improper

custom may not be predicated on isolated or sporadic incidents; it must be founded upon

practices of sufficient duration, frequency and consistency that the conduct has become a

traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir.

1996). Further, a municipality or private entity performing a state function "may be held

**MEMORANDUM DECISION AND ORDER - 18**

liable under § 1983 when the individual who committed the constitutional tort was an official with final policy-making authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it." *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1250 (9th Cir. 2010).

### A.   *Standard for Eighth Amendment Claims*

Plaintiff claims that Defendants have violated the Eighth Amendment to the United States Constitution. That amendment, which prohibits cruel and unusual punishment, requires that prisoners receive minimally adequate medical care, and prison officials or prison medical providers can be held liable if their "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain . . . .

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992) (internal citations omitted), *overruled in part on other grounds*, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 19**

1997) (en banc).

To exhibit deliberate indifference, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In the medical context, deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05 (footnotes omitted). A conclusion that a defendant acted with deliberate indifference requires that the plaintiff show both "a purposeful act or failure to respond to a prisoner's pain or possible medical need and . . . harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

Differences in judgment regarding appropriate medical diagnosis and treatment between an inmate and prison medical personnel, or between different medical providers, are not enough to establish a deliberate indifference claim. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). "[T]o prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk' to the prisoner's health." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (alteration omitted) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Mere indifference, medical malpractice, or negligence will not support a cause of

**MEMORANDUM DECISION AND ORDER - 20**

action under the Eighth Amendment. *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th

Cir. 1980) (per curiam). A mere delay in treatment does not constitute a violation of the

Eighth Amendment unless the delay causes further harm. *McGuckin*, 974 F.2d at 1060. If

medical personnel have been "consistently responsive to [the inmate's] medical needs,"

and there has been no showing that the medical personnel had "subjective knowledge and

conscious disregard of a substantial risk of serious injury," summary judgment is

appropriate. *Toguchi*, 391 F.3d at 1061.

    **B.   *Discussion***

        Defendants argue that (1) Plaintiff did not have a serious medical need when he

was evaluated by Defendant Takagi on March 20, 2009, and (2) Plaintiff cannot show that

Defendants acted with deliberate indifference.

        The Court rejects Defendants' assertion that Plaintiff did not have a serious

medical need. (*See* Memo. in Supp. at 12-13.) Although the Court finds that this argument

is not quite frivolous, it is certainly close. The Court has no trouble concluding that the

severe back and leg pain that Plaintiff described clearly constituted a serious medical

need. See *McGuckin,* 974 F.2d at 1060 (serious medical needs "include the existence of

chronic and substantial pain."). By focusing on Defendant Takagi's description of his

March 20 evaluation of Plaintiff, rather than on Plaintiff's own allegations, Defendants

ignore the cardinal rule of summary judgment, which is that all reasonable inferences

must be drawn in favor of the non-moving party. Indeed, the very fact Plaintiff's pain led

Takagi to enroll Plaintiff in the chronic care clinic is enough to defeat this argument. (*See*

**MEMORANDUM DECISION AND ORDER - 21**

Takagi Aff. ¶ 10 & Ex. A at SICI 112.)

The Court next considers whether Defendants were deliberately indifferent to Plaintiff's serious medical needs.

i.    <u>Eighth Amendment Claims Against Defendant Takagi</u>

Defendant Takagi examined Plaintiff three times during the time period at issue. A review of Takagi's testimony and notes, which Plaintiff does not controvert, shows that Takagi treated Plaintiff's pain competently and adequately. Takagi's notes show that Plaintiff's condition improved over the course of his treatment. Although Takagi took Plaintiff off of some of his medications, there is no evidence that this action was the result of deliberate indifference. Takagi discontinued the magnesium oxide because it was causing "decreased reflexes" and replaced it with ibuprofen. (Takagi Aff. ¶ 10.) Takagi prescribed Plaintiff other medication as well, such as naproxen for pain and the muscle relaxant Robaxin. (*Id.* ¶ 11-12.) Takagi also spoke to Dr. Patmas about Plaintiff's condition in an attempt to further Plaintiff's treatment. (*Id.*, Ex. A at SICI 117.)

Defendants have met their initial burden of showing that Defendant Takagi was not deliberately indifferent to Plaintiff's medical needs. The burden thus shifts to Plaintiff to established that a genuine issue of material fact precludes summary judgment. This he has failed to do.

Plaintiff asserts that Takagi should not have denied Plaintiff his shoes and bottom-bunk memos or the medication he was taking at the time he arrived in the RDU. But this shows nothing more than that Plaintiff disagrees with Takagi's treatment choices, which

**MEMORANDUM DECISION AND ORDER - 22**

is not enough to establish deliberate indifference. *See Sanchez*, 891 F.2d at 242. The record simply does not allow the Court to infer that Takagi's treatment of Plaintiff "was medically unacceptable under the circumstances" or "was chosen in conscious disregard of an excessive risk" to Plaintiff's health. *Toguchi*, 391 F.3d at 1058 (internal quotation marks omitted).

ii.    <u>Eighth Amendment Claims Against Defendant Smock</u>

Plaintiff's Eighth Amendment claims against Defendant Smock relate entirely to her responses to his grievance appeals. These claims fail for at least two reasons.

First, the law is clear that "[t]here is no legitimate claim of entitlement to a [prison] grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). As one court has explained, where prison officials' "only roles in [a civil rights] action involve the denial of administrative grievances or the failure to act . . . they cannot be liable under § 1983." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Second, Defendant Smock's responses to Plaintiff's grievances do not show deliberate indifference. Smock concurred with a detailed response from Anita Travis regarding her statement about Plaintiff's gait. Smock also informed Plaintiff, twice, that he would have to use a health services request form if he wished to be seen by medical staff. None of these responses violated the Eighth Amendment. Smock also did not exhibit deliberate indifference to Plaintiff's medical needs with respect to Plaintiff's generalized complaint about confidentiality and Corizon's alleged understaffing, because the grievance was only tangentially related—if at all—to Plaintiff's medical treatment.

**MEMORANDUM DECISION AND ORDER - 23**

There is no evidence that Smock inferred from the grievances that Plaintiff faced a substantial risk of serious harm as a result of his medical treatment. *See Farmer*, 511 U.S. at 837.

        iii.     Eighth Amendment Claims Against Defendant Corizon

Corizon cannot be held liable for any constitutional violation unless it has an official policy or unwritten practice constituting deliberate indifference to Plaintiff's serious medical needs. Plaintiff's course of treatment for his back, leg, and foot pain, as described above, does not raise a reasonable inference that Corizon had such a policy or practice. Plaintiff was evaluated by medical providers no less than six times over the course of approximately 18 months, in addition to his several physical therapy evaluations. He was prescribed muscle relaxants and pain medication, was given x-rays and an MRI, and underwent back surgery and foot surgery. This level of treatment is constitutionally adequate; indeed, it is comparable to that enjoyed by free citizens with good health insurance.

Plaintiff alleges that the MRI and his back surgery were unreasonably delayed and that his surgical wound became infected, requiring a second surgery. He claims also that his sacroiliac joint injection was done improperly and without sedation or image-guidance. However, these allegations do nothing to show that Corizon had a *policy or practice* of delaying necessary treatment, of mistreating wounds, or of performing procedures without proper monitoring or other safeguards.

Finally, there is nothing in the record to support Plaintiff's general claim that

**MEMORANDUM DECISION AND ORDER - 24**

medical staff make treatment decisions solely on the cost of the treatment.

**6.     Medical Practice Claims**

With respect to Plaintiff's medical malpractice claims, Defendants have submitted

sufficient evidence to show that Plaintiff would not be able to prove those claims at trial.

The elements of a medical malpractice claim under Idaho law are as follows:

> In any case, claim or action for damages due to injury to or
> death of any person, brought against any physician and
> surgeon or other provider of health care . . . such claimant or
> *plaintiff must, as an essential part of his or her case in chief,
> affirmatively prove by direct expert testimony and by a
> preponderance of all the competent evidence*, that such
> defendant then and there negligently failed to meet the
> applicable standard of health care practice of the community
> in which such care allegedly was or should have been
> provided . . . .

Idaho Code § 6-1012 (emphasis added). Plaintiff has not submitted "direct expert

testimony" establishing (1) the appropriate standard of care, and (2) a breach of that

standard of care by Defendants. Therefore, Plaintiff has failed to raise a genuine issue of

fact that would preclude summary judgment on his medical malpractice claims.

The statement in Plaintiff's medical records, made by an unidentified medical

provider, regarding the standard of care for a sacroiliac joint injection is not sufficient to

meet the statutory requirements for a medical malpractice claim. (*See* Response, Att. B at

SICI 144.) It is a hearsay statement made by an unknown medical provider, and there is

therefore insufficient evidence for the Court to deem this individual to be qualified as an

expert in this case. *See* Fed. R. Evid. 702 ("A witness *who is qualified as an expert* by

**MEMORANDUM DECISION AND ORDER - 25**

knowledge, skill, experience, training, or education may testify in the form of an opinion

or otherwise . . . .") (emphasis added). Plaintiff has also not provided any evidence

regarding the qualifications of Dr. Heckard, who opined that proper injection includes

fluoroscopic guidance or a CT. Moreover, these statements were not made under oath and

thus cannot be considered "testimony" for purposes of the Idaho statute. For these

reasons, Plaintiff's medical records do not satisfy the requirements of Idaho Code

§ 6-1012.

The Court recognizes that Plaintiff is a pro se prisoner and has limited resources

with which to locate an expert witness. However, Plaintiff could have attempted to

procure such a witness by contacting medical professionals. Moreover, although pro se

prisoner filings must be liberally construed, the Court "may not supply essential elements

of the claim" that Plaintiff has not alleged and proved. *See Ivey v. Bd. of Regents of Univ.

of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

In any event, although Plaintiff claims that his sacroiliac joint injection was not

image-guided and that he was not sedated during the procedure, he has not alleged that

the injection resulted in any injury, which is required for a medical malpractice claim in

Idaho. *See Puckett v. Verska*, 158 P.3d 937, 943 (Idaho 2007) (describing proximate

cause and injury as two of the elements that a plaintiff must prove to a jury in a

malpractice action).

**MEMORANDUM DECISION AND ORDER - 26**

## CONCLUSION

For the foregoing reasons, all remaining Defendants in this case (Corizon, Shahan, Takagi, and Smock) are entitled to summary judgment.

## ORDER

**IT IS ORDERED:**

1.     Plaintiff's Motion to Compel (Dkt. 88) is DENIED.

2.     Defendants' Motion for Summary Judgment (Dkt. 78) is GRANTED. All claims that have not previously been dismissed are now DISMISSED with prejudice.

DATED:  **September 18, 2013**



Honorable B. Lynn Winmill
Chief U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 27**